**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| GRANT LIVERETT, On Behalf of Himself and All Others Similarly Situated<br><br>        Plaintiffs,<br><br>    v.<br><br>TORRES ADVANECD ENTERPRISE SOLUTIONS LLC,<br><br>        Defendant. | Case No. 1:16-cv-339 - TSE - TCB |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant, Torres Advanced Enterprise Solutions LLC ("Torres"), by counsel, respectfully submits this supplemental memorandum of law in support of its motion to dismiss Count II of Plaintiff's Amended Complaint. At the close of the June 17 hearing on Torres' 12(b)(6) motion, the Court directed the parties to file supplemental briefs addressing whether and to what extent 26 U.S.C. § 7434 creates a cause of action for the fraud alleged under Count II—that is, an employer's submission of 1099 forms for employees misclassified as independent contractors but which otherwise accurately reflect the amounts paid. Order, ECF No. 23. As explained in more detail below, § 7434's plain language, purpose, and legislative history make clear that the statute does not create a cause of action for an employer's misclassification of employees. The statute addresses only the intentional misstatement of amounts paid to a taxpayer on forms filed with the Internal Revenue Service.

1

**Introduction**

The issue presented—*i.e.*, whether § 7434 creates a cause of action for an employer's alleged misclassification of personnel—is a question of statutory construction. As such, the Court's analysis must begin with the statutory language and end there if the language is unambiguous. *See Brown v. Thompson*, 252 F. Supp. 2d 312, 316 (E.D. Va. 2003) (Ellis, J.) (citing *Howe v. Smith*, 452 U.S. 473, 483 (1981)). If the statutory language is ambiguous, in that it lends itself to more than one reasonable interpretation, the Court must find the interpretation "which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that Congress manifested." *Fox v. Portico Realty Servs. Office*, 739 F. Supp. 2d 912, 920 (E.D. Va. 2010) (Ellis, J.) (quoting *United States v. Joshua*, 607 F.3d 379, 384 (4th Cir. 2010)). Any identified ambiguity "is best resolved first by reference to the statute's structure and other, related provisions, and then to the statute's purpose expressed at an appropriate level of abstraction." *Brown*, 252 F. Supp. 2d at 316 (citing *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997)). The Court may look beyond the language of the statute to the legislative history for guidance. If Congress' intent is not readily apparent from examining the legislative history, the Court must apply traditional tools of statutory construction. *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1482 (4th Cir. 1996).

<u>The Statute: 26 U.S.C. § 7434</u>

Section 7434 of title 26 of the United States Code provides, "If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a). Subsection (f) defines "information return" to mean any statement described in § 6724(d)(1)(A). 26 U.S.C. § 7434(f). Section 6724(d)(1)(A), in turn, defines "information

return" to mean "any statement of the amount of payments to another person required by" certain provisions of the tax code. 26 U.S.C. § 6724(d)(1)(A). With respect to remedies, subsection (e) states that "[t]he decision of the court awarding damages in an action brought under subsection (a) shall include a finding of the correct amount which should have been reported in the information return." 26 U.S.C. § 7434(e).

### *Liverett's Claim*

Count II of the Amended Complaint alleges that Torres hired Plaintiff and putative class members as employees but intentionally misclassified them as independent contractors for tax purposes. Liverett alleges that Torres issued misclassified personnel 1099 forms (for subcontractors) rather than W-2 forms (for employees) to avoid paying the employer's share of FICA and related tax withholdings and to reduce overhead and gain an unfair advantage over Torres' competitors. Am. Compl. ¶ 159. Liverett does not allege that the 1099s misstated the amounts Torres paid Liverett or putative class members. He alleges only that Torres' misclassification and issuance of 1099s was in violation of 26 U.S.C. § 7434. As such, Liverett's Complaint does not include any allegation concerning the "correct amount which should have been reported in the information return" as required by subsection (e) of § 7434.

**Argument**

I. **Section 7434 Does Not Create a Cause of Action for an Employer's Alleged Misclassification of Employees.**

Section 7434 does not create a cause of action for an employer's alleged misclassification of personnel and related issuance of 1099 forms showing amounts actually paid. The statute's plain language, structure, purpose and legislative history lead to one conclusion: Congress intended to provide a remedy for injuries caused by any person who intentionally misrepresents the <u>amounts paid</u> to any person.

    A.    <u>The Plain Language of Section 7434 Makes Clear That the Statute Applies to False Statements as to Amounts Paid.</u>

The plain language of § 7434 unambiguously applies to the fraudulent reporting of the amount of payments. Section 7434(a) provides that "[i]f any person willfully files a fraudulent information return *with respect to payments* purported to be made to any other person, such other person may bring a civil action for damages against the person filing the return." 26 U.S.C. § 7434(a) (emphasis added). Subsection (f) defines "information return" to mean "any statement described in § 6724(d)(1)(A). 26 U.S.C. § 7434(f). Section 6724(d)(1)(A), in turn, defines "information return" to mean "any statement of the *amount of payments* to another person . . ." 26 U.S.C. § 6724(d)(1)(A) (emphasis added). Together, these provisions make clear that Congress was concerned with giving taxpayers recourse against persons who intentionally misreport the taxpayer's income. Congress emphasized this purpose by requiring that courts awarding damages under § 7434(a) must "include a finding as to the *correct amount* which should have been reported in the information return." 26 U.S.C. § 7434(e) (emphasis added). This requirement proceeds from Congress' expectation that every § 7434(a) claim will involve an intentional misstatement of the taxpayer's income. *See, e.g.*, *Bailey v. Shell W. E&P, Inc.*, No. CA 3-97-CV-0518-R, 1998 WL 185520 (N.D. Tex. Apr. 14, 1998) (unpublished) (plaintiffs failed to

4

state § 7434(a) claim based on defendant's alleged miscalculation of royalty payments because tax forms accurately reported the amounts paid), *aff'd*, 170 F.3d 184 (5th Cir. 1999) (unpublished); *Boiling v. PP&G Inc.*, Civil No. WDQ-15-911, 2015 WL 9255330 (D. Md. Dec. 17, 2015) (slip op.) (denying motion to dismiss where plaintiffs alleged that income reported on W-2 forms was "facially incorrect"). The Court could not make such a finding here because it is not alleged that Torres misreported the amount of any payments made. Liverett may contend that all information returns are "with respect to payments"—and therefore the statute could apply whenever a person files an information return reporting payments that are associated with some fraud. But Congress could not have intended such a broad construction as it would "wildly expand the domain of section 7434." *Bailey*, 1998 WL 185520, at *3. "If fraudulent acts become actionable under section 7434 simply because income related to those acts [is] declared on a federal tax return, the statute could apply to just about anything." *Id.* Under a broad reading, it is difficult to imagine any commercial fraud that would *not* be covered under § 7434. *Id.* Congress could not have intended for the provision to have such expansive reach. Rather, Congress intended for § 7434 to reach only tax forms that include a false representation as to the amount paid. In this case, Liverett has not alleged that the earnings or other information reported in his 1099 form was false; he simply alleges that Torres submitted the wrong form. That is insufficient to state a claim under § 7434.

      B.    <u>The Statute's Purpose and Legislative History Show That Congress Intended to Provide a Remedy for Injuries Caused by Misreported Income.</u>

Read in context, § 7434(a) is not ambiguous. But even if it were, the statute's purpose and legislative history further support a determination that Congress meant to provide a remedy for misreported income, not misclassification.

The context in which § 7434 was enacted shows further that its purpose is limited. Section 7434 sought to address frivolous filings against tax protestors and other malcontents who

"sometimes file fraudulent information returns reporting large amounts of income for judges, law enforcement officials, and others who have incurred their wrath." 4 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts 111-33 (2d ed. Supp. 2002). Previously, although it was criminal to file false information returns, there was no statutory civil remedy available. *See* H.R. Rep. No. 104-506, at 35 (1996), reprinted in 1996 U.S.C.C.A.N. 1143, 1158 [hereinafter House Report] ("Federal law provide[d] no private cause of action to a taxpayer who [was] injured because a fraudulent information return [had] been filed with the IRS asserting that payments [had] been made to the taxpayer.").[1] The expressed objective of Congress in passing § 7434 was to provide redress to taxpayers who suffer loss and inconvenience due to the receipt by the IRS of fraudulent information returns filed by persons intent on defrauding the IRS or harassing the taxpayer. House Report at 35. As one court observed, "This is indeed a worthwhile goal. If one taxpayer falsely reports to the IRS that another taxpayer has received certain income or made certain payments, the honest taxpayer may be assessed taxes not actually owed, or have to initiate costly proceedings to straighten out the mess." *Bailey*, 1998 WL 185520, at *2.

Although the statute is clear in context, many practitioners have attempted to stretch its application. The House Committee on Ways and Means expressly cautioned that the statute was not intended "to open the door to unwarranted or frivolous actions or abusive litigation practices." House Report at 35. Despite this admonition, plaintiffs' lawyers recently have begun to allege violations of § 7434 in "misclassification" cases. Given the language and purpose of the statute, it is unsurprising that no Circuit Court has adopted the Plaintiff's interpretation of § 7434. Nor has any court imposed liability on the basis of a mere misclassification without an additional

---

[1] *See also, e.g.*, *U.S. v. Dykstra*, 991 F.2d 450, 451 (8th Cir. 1993) (during prosecution of tax fraud case, defendant engaged in a retaliation scheme against several internal revenue officials, a U.S. Marshall, two federal district court judges and many other individuals . . ."); *U.S. v. Chance*, 496 F. App'x. 302, 2012 WL 5395263 (4th Cir. 2012) (affirming conviction based on retaliatory lien filing and false tax returns).

misreporting of income. Of the eighty-eight cases that cite § 7434, it appears that only one was allowed to go forward to trial based on a claim of misclassification. *See Seijo v. Casa Salsa*, No. 12-60892, 2013 WL 6184969 (S.D. Fla., Nov. 25, 2013). In *Seijo*, a jury ultimately found that the 1099 forms issued in that case (which correctly reported the amounts actually paid to the plaintiff) were not fraudulent. *Id.* A year later, the same Florida-based court stated in dicta that a reclassification claim might provide a basis for a claim under § 7434, but dismissed the count because the plaintiff had not plead adequate facts to show that an information return was "willfully filed" with "fraudulent" information. *See Leon v. Tapas & Tintos, Inc.*, 51 F.Supp.3d 1290 (S.D. Fla. Oct. 8, 2014). In contrast, the vast majority of cases, and all cases resulting in a judgment, involved an intentional misreporting of some *amount* of income.[2]

## II. Congress Did Not Intend to Duplicate Existing Remedies Under the Fair Labor Standards Act.

Misclassification cases usually are brought, appropriately, under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq. See*, *e.g.*, *McFeely v. Jackson St. Entertainment, LLC*, --- F.3d ---, 2016 WL 3191896 (4th Cir. 2016); *Chao v. Mid-Atlantic Installation Servs., Inc.*, 16 F. App'x 104 (4th Cir. 2001); *Stone v. SRA Int'l, Inc.*, No. 2:14cv209, 2014 WL 5410628 (E.D. Va. Oct. 22, 2014) (unpublished); *Houston v. URS Corp.*, 591 F. Supp. 2d 827 (E.D. Va. 2008). Many of them proceed on a theory that the employer's misclassification resulted in an underpayment of wages and other benefits. As is the case here, such disputes concern the proper amounts due the taxpayer, not whether tax forms misstated the amounts actually paid. It stands to reason that if aggrieved taxpayers have had recourse for misclassification since the FLSA was enacted in 1938, Congress would not have enacted § 7434 to address that problem. Rather, as discussed above, Congress enacted the provision in 1996 because then-current federal law did not provide a civil

---

[2]    Many of the cases citing § 7434 contain no relevant discussion of the statute or its application.

7

remedy to public officials and others harmed by the fraudulent misreporting of income by tax protestors, criminal defendants and other malcontents. *See supra* at 5; House Report at 35. Congress did not have misclassification in mind because remedies for that already existed under the FLSA. The legislative history shows that Congress did not intend for § 7434 to duplicate existing remedies available under the FLSA. It enacted the provision to address a specific problem for which there was no civil remedy—the provision of false information to the IRS regarding a taxpayer's income.

It is well-established that "'a precisely drawn, detailed statute pre-empts more general remedies.'" *Hinck v. United States*, 550 U.S. 501, 506 (2007) (quoting *EC Term of Years Trust v. United States*, 550 U.S. 429, 434 (2007); *see also Block v. North Dakota ex rel. Board of Univ. and School Lands*, 461 U.S. 273, 284–86 (1983). And when Congress enacts a specific remedy when no remedy was previously recognized, or when previous remedies were "problematic," the remedy provided is generally regarded as exclusive. *Id.* at 285. The FLSA specifically addresses and provides remedies for misclassification. *See* 29 U.S.C. 203(g); 29 U.S. Code § 216(b) (remedies for violations of §§ 206 or 207 of the FLSA include payment of unpaid minimum wages or overtime (as applicable) and an equal amount as liquidated damages).[3] Liverett's claim under § 7434, which does not address classification at all, depends entirely on a finding under the FLSA

---

[3] The Department of Labor also provides fact sheets and other materials highlighting the FLSA as the appropriate vehicle for redressing allegations of employee misclassification. *See, e.g.*, Administrator's Interpretation No. 2015-1, *available at* https://www.dol.gov/whd/workers/Misclassification/AI-2015_1.pdf ("[T]he FLSA defines "employ" broadly [and] clearly covers more workers as employees [than the common law]"); Fact Sheet 13: Am I an Employee?: Employment Relationship Under the Fair Labor Standards Act (FLSA), *available at* https://www.dol.gov/whd/regs/compliance/whdfs13.htm.

that Liverett was misclassified as a contractor. As his claim depends on the violation of the FLSA, it makes no sense to look to the Internal Revenue Code for a duplicative remedy of such a violation.

Neither Liverett nor the putative class members allege that Torres provided false information to the IRS regarding amounts Torres paid them. As such, their tax-fraud claim must be dismissed.

Dated: June 24, 2016　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ George R. Calhoun, V*
　　　　　　　　　　　　　　　　　　　　George R. Calhoun, V (pro hac vice)
　　　　　　　　　　　　　　　　　　　　george@ifrahlaw.com

　　　　　　　　　　　　　　　　　　　　　　*/s/ Jeffrey R. Hamlin*
　　　　　　　　　　　　　　　　　　　　Jeffrey R. Hamlin (VSB No. 46932)
　　　　　　　　　　　　　　　　　　　　jhamlin@ifrahlaw.com
　　　　　　　　　　　　　　　　　　　　IFRAH PLLC
　　　　　　　　　　　　　　　　　　　　1717 Pennsylvania Ave. NW, Suite 650
　　　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　　　(202) 524-4143 – Tel.
　　　　　　　　　　　　　　　　　　　　(202) 524-4141 – Fax

　　　　　　　　　　　　　　　　　　　　*Counsel for Defendant Torres Advanced Enterprise Solutions, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 24, 2016, I will serve the foregoing **Supplemental Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment** with the Clerk of Court using the Court's CM/ECF system, which will send a notification of electronic filing (NEF) to all counsel of record.[4]

    /s/ Jeffrey R. Hamlin
Jeffrey R. Hamlin

---

[4] A courtesy copy will be delivered to chambers within twenty-four hours in accordance with the Alexandria Division's chambers-copy rules.