IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GRANT LIVERETT, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>TORRES ADVANCED ENTERPRISE )<br>SOLUTIONS LLC, )<br>    Defendant. ) | Case No. 1:16-cv-339 |

## MEMORANDUM OPINION

In this employment dispute, plaintiff Grant Liverett alleges that his employer, defendant Torres Advanced Enterprise Solutions LLC, (i) violated the Fair Labor Standards Act ("FLSA")[1] by failing to pay required minimum and overtime wages to employees, (ii) committed tax fraud by willfully treating employees as independent contractors in order to avoid paying employer taxes, and (iii) breached the employment agreement between the parties.

Defendant filed a motion for summary judgment and a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. The motions were fully briefed and argued. At the conclusion of oral argument, a bench ruling issued denying the motions in substantial part, but deferring ruling on one count pending further briefing. Specifically, defendant's motion for summary judgment was denied pursuant to Rule 56(d)(1), Fed. R. Civ. P., and the motion to dismiss was denied with respect to Count I, alleging FLSA violations, and Count III, alleging breach of contract. *See Liverett v. Torres Advanced Ent. Solutions LLC*, No. 16-cv-339 (E.D. Va. June 17, 2016) (Order) (Doc. 23). The motion to dismiss Count II, alleging tax fraud, was taken under advisement, and the parties were directed to file supplemental briefs

---

[1] 29 U.S.C. § 201 *et seq.*

addressing a question of statutory interpretation pertinent to plaintiff's claim in Count II, an issue that neither party addressed in the initial briefing. The parties were directed to brief whether 26 U.S.C. § 7434(a) creates a private cause of action for tax fraud where, as here, the alleged misrepresentation giving rise to the action is unrelated to the amount of payments the defendant reported paying to the plaintiff. *See id.* For the reasons that follow, it does not.

## I.

The relevant factual allegations may be succinctly summarized.[2] Plaintiff was employed by defendant,[3] a government contractor, to provide bid procurement and contract management services at Camp Bondsteel in Kosovo, the headquarters for a North Atlantic Treaty Organization peacekeeping force led by the United States Army. The parties sharply dispute whether plaintiff is an employee or an independent contractor. Plaintiff alleges that defendant is engaged in a scheme to misclassify its employees as independent contractors in order to avoid paying the minimum and overtime wages to which these employees are due under the FLSA. Relatedly, plaintiff alleges that defendant, by intentionally misclassifying its employees as independent contractors on tax documents, is defrauding the federal government for the purpose of avoiding paying certain employer taxes.

Importantly, the fraudulent tax scheme that plaintiff alleges concerns the *type* of information return that defendant provides to its employees. Specifically, plaintiff alleges that

---

[2] These allegations are derived from the Amended Complaint. *See Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 827 (4th Cir. 2010) (on a motion to dismiss, the facts as alleged in the complaint are assumed to be true).

[3] The Amended Complaint was filed on May 20, 2016, and alleges that plaintiff is a current employee of defendant. *See* Am Comp. ¶ 1. Yet, the employment agreement between the parties, to which the Amended Complaint refers, has a termination date of June 21, 2016. *See* D. Mot. Summ. J. (Doc. 17), Ex. 2-C, § 7.1. Thus, it appears from the record that plaintiff's employment relationship with defendant has terminated since the initiation of this lawsuit.

instead of issuing the IRS Form W-2s to which defendant's employees are entitled, defendant instead willfully issued IRS Form 1099s, which represented that defendant's employees were independent contractors. *See* Am. Comp. ¶¶ 83, 91c, 92, 104, 124, 151, 159. There is no allegation that defendant willfully issued its employees or independent contractors information returns that reflected inaccurate amounts of wages paid or inaccurate payments in any other respect. As alleged by plaintiff, defendant is liable for tax fraud based only on the allegation that defendant willfully misrepresented the status of its employees by issuing them Form 1099s instead of Form W-2s.

## II.

The Internal Revenue Code provides as follows:

> If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

26 U.S.C. § 7434(a). This statute, at first glance, appears quite simple and straightforward. But, a more careful reading reveals that it harbors a significant ambiguity, the resolution of which impacts this case.

The source of the ambiguity in § 7434(a) is the phrase "with respect to payments purported to be made to any other person." Simply put, there is ambiguity as to what the phrase "with respect to…" modifies. On the one hand, § 7434(a) may refer to an "information return with respect to payments purported to be made to any other person" that is "fraudulent." On this reading, "with respect to…" describes "information return," and such an information return that is false or misleading in any respect aimed at obtaining something of value is "fraudulent" and therefore actionable. On the other hand, "with respect to payments purported to be made to any other person" may be read as limiting "fraudulent." Under this interpretation, the filing of an

information return is actionable only if the information return is false or misleading as to the amount of payments purportedly made.

Resolving this ambiguity is of consequence here, as the Amended Complaint states a claim for relief under the former interpretation, but not under the latter. To clarify, a Form 1099 that identifies plaintiff as an independent contractor when he is in fact an employee is an information return that is false with respect to plaintiff's employment status, but so long as the Form 1099 accurately reports the amount of wages defendant paid to plaintiff, the return is not fraudulent with respect to the amount of the payments made. Because the Amended Complaint contains no allegation that defendant willfully misrepresented the amount of wages paid to plaintiff, plaintiff's tax fraud claim rises or falls on whether willfully misrepresenting an employee as an independent contractor constitutes actionable fraud for purposes of § 7434(a). Thus, the question presented is whether § 7434(a) creates a private cause of action where, as here, the alleged misrepresentation is the filing of the wrong *type* of information return rather than a misrepresentation as to the amount of the payments made.

Interestingly, no court of appeals has addressed § 7434(a)'s ambiguity.[4] Although some federal district courts have found allegations that an employer issued Form 1099s when Form W-

---

[4] There are twelve circuit court opinions citing § 7434, and no precedential opinion has dealt with the question presented in this case. *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620-21 (8th Cir. 2015) (holding that a plaintiff can seek statutory damages even in the absence of actual damages); *Pitcher v. Waldman*, 591 F. App'x 466, 467 (6th Cir. 2015) (affirming judgment for plaintiffs where defendant falsely claimed to have made payments); *Vandenheede v. Vecchio*, 541 F. App'x 577, 579-82 (6th Cir. 2013) (affirming dismissal for failure to plead fraud with particularity); *Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568 (2d Cir. 2011) (holding that intentional failure to file an information return is not a willful filing); *Cavoto v. Hayes*, 634 F.3d 921, 924 (7th Cir. 2011) (affirming judgment for defendant where the allegedly fraudulent information return was not a qualifying return under

2s were in fact appropriate—the same allegation advanced here—sufficient to state a claim,[5] these cases did not carefully consider the statutory language or directly address the ambiguity on the face of § 7434(a). Instead, these courts—as courts routinely do—recited the elements of the cause of action under § 7434(a) as (i) the defendant issued an information return, (ii) the information return was fraudulent, and (iii) the issuance was willful,[6] and therefore concluded that the filing of an information return that is fraudulent in any respect is actionable. This formulation of the elements, however, does not address the effect of the phrase "with respect to..." and overlooks the ambiguity. The failure to give this language its proper effect undermines

---

the statute); *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 716 (5th Cir. 2010) (citing § 7434 only as part of a description of a prior lawsuit); *Mikulski v. Centerior Energy Corp.*, 435 F.3d 666, 674 n.3 (6th Cir. 2006) (stating that § 7434 could not cover events occurring pre-enactment), *vacated and reheard en banc*, 501 F.3d 555, 563 (6th Cir. 2007) (*en banc*) (same); *Ptasynski v. Shell W. E&P, Inc.*, No. 99-11049, 2002 WL 32881277, at *2 (5th Cir. 2002) (discussing § 7434 only as part of the procedural history); *Bailey v. Shell W. E&P, Inc.*, 170 F.3d 184, 1999 WL 46967, at *1 (5th Cir. 1999) (affirming district court's conclusion that "the statute only encompasses filings which claim an amount of royalties which differ from the amount actually paid"); *Arvin v. Go Go Inv. Club*, 129 F.3d 124, 1997 WL 709329, at *1 (9th Cir. 1997) (concluding that § 7434 does not create a cause of action for negligence or breach of fiduciary duty); *James v. United States*, 970 F.2d 750, 756 (10th Cir. 1992) (citing an old version of § 7434 predating the civil cause of action in issue here).

[5] *See Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1298 (S.D. Fla. 2014) ("[T]he Court finds that for purposes of 26 U.S.C. § 7434, Plaintiff has sufficiently alleged that Defendant Tapas & Tintos issued Form 1099-MISC's for the payments it made to Plaintiff, and that the issued forms violated Section 7434 where Plaintiff could properly be classified as an employee rather than an independent contractor."); *Seijo v. Casa Salsa, Inc.*, No. 12-cv-60892, 2013 WL 6184969, at *7 (S.D. Fla. Nov. 25, 2013) ("Seijo has produced evidence from which a reasonable factfinder could conclude that Casa Salsa violated § 7434 by filing Form 1099–MISC's for the payments it made to her because that form is used to record payments made to independent contractors and Seijo was not an independent contractor.").

[6] *Leon*, 51 F. Supp. 3d at 1297; *Seijo*, No. 12-cv-60892, 2013 WL 6184969, at *7. *See also, e.g., Bolling v. PP&G, Inc.*, No. WDQ-15-911, 2015 WL 9255330, at *6 (D. Md. Dec. 17, 2015) (employing the same recitation of elements); *Pitcher v. Waldman*, No. 11-cv-148, 2012 WL 5269060, at *4 (S.D. Ohio Oct. 23, 2012) (same).

Congress's intent in enacting § 7434; the "with respect to..." language serves an important purpose in limiting the scope of actionable frauds.

### A.

When resolving the meaning of a statute, "the starting point...is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Indeed, it is axiomatic that "[i]f the statutory language is plain," a court "must enforce it according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). Of course, statutory language is not always plain. Where ambiguity is present, the interpretative project must take into account "the overall statutory scheme." *See id.* After all, statutory interpretation is the task of "constru[ing] *statutes*, not isolated provisions." *Id.* (emphasis added). Indeed, as the Supreme Court has recently explained, proper statutory interpretation proceeds "with reference to the statutory context, 'structure, history, and purpose,'" as well as "common sense." *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (quoting *Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013)). Thus, "although the analysis properly focuses on the text, the analysis is not necessarily limited to the text." *Angiotech Pharms. Inc. v. Lee*, --- F. Supp. 3d ---, 2016 WL 3248352, at *9 (E.D. Va. June 8, 2016). As already discussed, § 7434(a) is facially ambiguous. Accordingly, the task here is to identify the clues that point in favor of one interpretation over the other.

The language of § 7434(a) provides the first clue. The placement of "with respect to..." following "information return" fairly supports the broader reading of § 7434(a), insofar as one might expect the modifying phrase to follow the term it modifies. Yet, to give this clue significant weight is to assume (i) that Congress acted with care in drafting the language of § 7434, (ii) that Congress adhered to a particular rule of syntax, and (iii) that Congress accordingly placed the modifying phrase directly following the modified term. Although such assumptions

are fair and reasonable, it is commonly accepted that interpretive presumptions based on congressional care in drafting and adherence to particular rules of syntax "can assuredly be overcome by other indicia of meaning." *United States v. Hayes*, 555 U.S. 415, 425 (2009) (so stating as to the last antecedent rule).[7] Thus, any inference from the placement of "with respect to…" is a weak one that must yield to weightier contextual clues, if such clues are present. *Cf. Payless Shoesource, Inc.*, 585 F.3d at 1371-72 (noting "how common misplaced modifiers are in daily usage").

And indeed, context provides two significant and weightier clues that § 7434(a)'s "with respect to…" language is intended to limit the scope of "fraudulent" rather than to describe the "information return." The first contextual clue is found in § 7434(f), which defines "information return" as "any statement described in section 6724(d)(1)(A)." Section 6724(d)(1)(A), in turn, provides a definition of the term "information return," namely "any statement of the *amount of payments* to another person required by" any of ten provisions of law. *See* 26 U.S.C. § 6724(d)(1)(A) (emphasis added). Thus, if § 7434(a) is read together with § 7434(f), the private cause of action addresses "a fraudulent [statement of the amount of payments to another person] with respect to payments purported to be made to another person." As this interpretive exercise makes clear, if "with respect to…" describes "information return," then the "with respect to…"

---

[7] *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (the grammatical rule "that terms connected by a disjunctive be given separate meanings" can yield to "context"); *Costanzo v. Tillinghast*, 287 U.S. 341, 344 (1932) ("[W]e should not apply the rules of syntax to defeat the evident legislative intent."); *Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366, 1371 (10th Cir. 2009) ("[W]e know that grammatical rules are bent and broken all the time."); *United States v. Moore*, 613 F.2d 1029, 1040 (D.C. Cir. 1979) ("[S]ometimes a strict grammatical construction will frustrate legislative intent."). *Cf. Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (the semantic rule of consistent usage must not be "rigid" and must "readily yield[]" where context suggests that Congress intended to convey an alternative meaning).

language is redundant. This is so because the characteristic that an information return concerns the amount of payments to another person is inherent in the term "information return" as defined by § 7434(f). In other words, an "information return," by definition, relates to the amount of payments to a person. Given this, the phrase "with respect to..." in § 7434(a) would be redundant unless given an independent meaning. And of course, the Supreme Court has "cautioned against reading a text in a way that [creates] redundan[cy]." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 669 (2007). Here, the sensible solution to avoid redundancy is to read the "with respect to..." language as describing the nature of the fraud, namely fraud as to the amount paid.

The second contextual clue is found in § 7434(e), which requires that "[t]he decision of the court awarding damages in an action brought under subsection (a) shall include a finding of the correct amount which should have been reported in the information return." This language demonstrates that Congress contemplated that actionable fraudulent representations would relate to the amount paid to the aggrieved person. Indeed, suppose plaintiff's tax fraud count here were adjudicated on the merits and plaintiff proved the facts as alleged. In such a scenario, the final order entering judgment for plaintiff would need to recite that the Form 1099s reported the correct amount of wages even though the fraud had nothing to do with the amount reported. Surely Congress did not intend to require a court to make findings about the correct amount that should have been reported where there is no allegation that the defendant misrepresented the amount. Rather, the obvious inference from § 7434(e) is that Congress intended for the actionable frauds to stem only from misrepresentations concerning the amounts paid.

On balance, when § 7434(a) is read in the statute's broader context, there are sufficient indicia of congressional intent to conclude that "with respect to..." modifies "fraudulent" rather

than "information return." Indeed, "[g]iven how common misplaced modifiers are in daily usage," the most plausible conclusion requires "candidly acknowledg[ing]" that Congress drafted § 7434(a) without due care for conveying the intended meaning as clearly as possible. *See Payless Shoesource, Inc.*, 585 F.3d at 1371-72. To conclude otherwise would be to accept both (i) that Congress employed superfluous language in § 7434(a) and (ii) that Congress imposed a requirement via § 7434(e) that has no purpose in many possible instances of liability. To the contrary, the relevant contextual clues point conclusively to the understanding that § 7434(a) creates a private cause of action only where an information return is fraudulent with respect to the amount purportedly paid to the plaintiff.

### B.

This conclusion finds further support in § 7434's legislative history and purpose. The history is scant—a mere few paragraphs in a House Report—but instructive.[8] Congress's rationale for enacting § 7434 was that "[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers." House Report at 35.[9] Indeed, prominent tax law commentators have traced § 7434's origin to a specific policy problem: "malcontents who 'sometimes file fraudulent information returns reporting large

---

[8] *See* H.R. Rep. No. 104-506, at 35 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1143, 1158 ("House Report").

[9] In the quoted portion of the House Report, "receiving" is a gerund. Accordingly, under traditional grammatical rules that word ought to be preceded by a possessive noun, *i.e.*, "IRS's," as the harm to the taxpayer derives from the *receipt* of the fraudulent information return, not from the IRS itself. That the legislative history fails to follow this grammatical convention reinforces the wisdom of affording lesser weight to interpretative canons rooted in the assumption that Congress correctly employs the traditional rules of English syntax. *See supra*, note 7 and accompanying text.

amount of income for judges, law enforcement officials, and others who have incurred their wrath.'"[10] In other words, Congress was aware of a problem—the malicious reporting of false payments—and designed § 7434 to afford a damages remedy for victims of that problem. It is entirely consistent with this legislative purpose to read § 7434(a) as creating a private cause of action only for the filing of information returns that are fraudulent with respect to the amount paid to another. The fraudulent scheme plaintiff alleges here, by which defendant is attempting to avoid the payment of employer taxes by misrepresenting employees as independent contractors, falls beyond the scope of the policy problem that § 7434 was designed to address.

Moreover, this narrow view of the scope of actionable frauds under § 7434(a) accords with Congress's express desire "not...to open the door to unwarranted or frivolous actions or abusive litigation practices," such as "an unfounded or frivolous action...by a current...employee of an employer who is not pleased with one or more items that his or her current or former employer has included on the employee's Form W-2." House Report at 35. Thus, to the extent any inference is warranted from the legislative history and purpose of § 7434, that inference supports the conclusion that "with respect to..." limits the types of actionable fraud, a conclusion consistent with the contextual clues previously discussed.

Further, the conclusion that plaintiff's tax fraud claim fails is consistent with Congress's intended scheme for redressing violations of the sort plaintiff alleges. At its core, plaintiff's complaint is that defendant improperly classified plaintiff as an independent contractor rather than as an employee. Yet, plaintiff is not complaining simply because he desires one title over another. Rather, plaintiff desires the benefits that follow employee status under the FLSA,

---

[10] *See* Jacob L. Todres, <u>Torts, Tax Reporting, and Preemption: Is There Tort Liability for Incorrect Information Reports?</u>, 28 J. Corp. L. 259, 281 (2003) (quoting 4 Boris I. Bittker & Lawrence Lokken, <u>Federal Taxation of Income, Estates and Gifts</u> 111-33 (2d ed. Supp. 2002)).

namely guaranteed minimum and overtime wages. In this respect, the Fourth Circuit has observed that the FLSA creates a comprehensive enforcement scheme that precludes enforcement through other federal and state law means. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (holding that the FLSA preempts certain state law claims); *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437, 442 (4th Cir. 1999) (holding that 42 U.S.C. § 1983 does not provide a remedy for FLSA violations). To read § 7434(a) as creating a private cause of action for the injury plaintiff alleges here would essentially read § 7434(a) as encroaching on the territory that the FLSA occupies. Indeed, there can be no doubt that Congress intended for claims arising from misclassification of employees as independent contractors to find statutory redress under the FLSA. Thus, a narrow reading of § 7434(a) does not leave plaintiff without a remedy if defendant in fact misclassified him as an independent contractor and thereby deprived him of money he is owed—far from it. To the extent defendant's allegedly willful misclassification harmed plaintiff, the FLSA will ensure that plaintiff is made whole *and* that defendant is deterred from future willful misclassifications by the imposition of liquidated damages. *See* 29 U.S.C. § 216(b). Under plaintiff's theory, he would stand to recover damages under the FLSA in addition to statutory damages under § 7434(b), despite having incurred no separate injury, despite the FLSA's fully compensating his actual damages, and despite the FLSA's imposing a liquidated damages penalty to deter future misconduct. Simply put, an expansive reading of § 7434(a) is not only unnecessary to achieve Congress's substantive policy goals with respect to employee compensation, but also undermines the FLSA's status as the comprehensive scheme for addressing such goals.

## III.

In sum, Congress's goal in enacting § 7434 was to give redress to taxpayers aggrieved by the filing of information returns that fraudulently misrepresent the amount paid to the taxpayer. In expressing this intent, Congress drafted § 7434 poorly, such that it is susceptible to more than one meaning, including the meaning upon which plaintiff seizes, a meaning that runs counter to the purpose of the statute and, in some circumstances, to the exclusive and comprehensive nature of the FLSA.[11] Yet, the goal of statutory interpretation must be to employ interpretative tools that "will help avoid mismatches between the *intended* meaning and the *interpreted* meaning of statutory language." *See* Caleb Nelson, Statutory Interpretation 4 (2011). Here, neither unambiguous text, statutory context, nor congressional purpose support plaintiff's position that defendant's alleged willful filing of Form 1099s instead of Form W-2s is actionable under § 7434(a). Thus, the gap between what Congress meant and what Congress said is readily bridged, and § 7434(a) must be read to provide a private cause of action only where a defendant willfully files information returns that misrepresent the amount of payments made.

For the foregoing reasons, plaintiff's tax fraud allegations in the Amended Complaint fail to state a claim for relief under § 7434(a), and Count II must therefore be dismissed.

An appropriate Order will issue.

Alexandria, Virginia
June 28, 2016

T. S. Ellis, III
United States District Judge

---

[11] To be clear, Congress could have avoided the ambiguity identified here simply by moving the placement of the word "fraudulent" such that § 7434(a) would read: "If any person willfully files an information return that is fraudulent with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return."